UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHAWN HUNT,<br><br>Petitioner,<br><br>v.<br><br>MATTHEW DIVRIS,<br><br>Respondent. | Civil No. 26-11792-LTS |

MEMORANDUM AND ORDER ON
RESPONDENT'S MOTION TO DISMISS (DOC. NO. 12)

September 10, 2026

SOROKIN, J.

Shawn Hunt, a prisoner at the Massachusetts Correctional Institution in Shirley, Massachusetts, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondent has moved to dismiss the petition, arguing that Hunt filed it after the applicable limitation period expired. Because the petition is untimely, it is DISMISSED.

## I. BACKGROUND

On January 20, 2015, after a jury trial in Bristol County Superior Court, Hunt was convicted of second-degree murder and sentenced to life imprisonment with parole eligibility after fifteen years. Doc. No. 1 at 2; Doc. No. 13-1 at 20–21.[1] The charges arose from a drive-by shooting more than a decade earlier in New Bedford, Massachusetts. Commonwealth v. Hunt, No. 21-P-237, 2022 WL 16918090, at *1 (Mass. App. Ct. Nov. 14, 2022).

[1] Citations to "Doc. No. __ at __" reference items filed on the Court's electronic docket ("ECF") using the document and page numbers appearing in the ECF headers.

Hunt timely appealed. Doc. No. 13-1 at 21. New counsel replaced Hunt's trial lawyer, and the Massachusetts Appeals Court ("MAC") stayed proceedings on the direct appeal pending the filing and resolution of a motion for a new trial. Id. at 21–22. Hunt filed that motion in May 2017, followed promptly by a separate motion seeking post-conviction discovery. Id. at 22. After a two-day evidentiary hearing, the trial court denied the motion for a new trial (and, in doing so, implicitly denied Hunt's request for discovery) in February 2021. Id. at 111–36; see Hunt, 2022 WL 16918090, at *9. The MAC consolidated Hunt's appeal of that ruling with his direct appeal. Hunt, 2022 WL 16918090, at *1.

In fall 2022, the MAC affirmed Hunt's conviction and sentence, as well as the denial of his post-conviction motions.[2] Id. at *10; Doc. No. 13-1 at 25. At the conclusion of its decision, the MAC noted:

> We do think that [Hunt] was entitled on his postconviction discovery motion to discovery of any documents that may evidence favorable treatment of [a key witness], to the extent that they exist and are in the possession, custody, or control of the prosecution. Thus, although we find no abuse of discretion on the record before us, [Hunt] may, if he chooses, file a motion to compel the Commonwealth to provide the postconviction discovery he sought previously, and any additional discovery to which he is entitled under [the relevant state procedural rule].

Hunt, 2022 WL 16918090, at *10 (citation modified). The Supreme Judicial Court ("SJC") denied further review on January 12, 2023. Doc. No. 13-1 at 31. Hunt did not petition the United States Supreme Court for certiorari.

On February 27, 2023, Hunt filed a post-conviction discovery motion as the MAC had described. Id. at 26. The motion, which was not accompanied by a new or renewed motion for a new trial, was allowed after a hearing on April 26, 2023. Id. On June 5, 2023, the Commonwealth notified the state court and Hunt that it did not possess any information beyond

---

[2] The MAC issued an unpublished decision on October 20, 2022, then amended it in one limited respect on November 14, 2022. See Doc. No. 13-1 at 29–30.

that which it had previously produced concerning three of Hunt's five discovery requests. Id. at 109–10. As to the remaining requests, which sought case files for two matters concerning a witness, the Commonwealth stated that its files had been destroyed pursuant to a routine document-retention process, but it provided the name and address of the prosecutor who had handled both matters. Id. A month and a half later, on July 17, 2023, Hunt filed a motion asking the state court to sanction the Commonwealth for destroying the case files he had requested. Id. at 26. The state court denied the sanctions motion on September 27, 2023. Id. Hunt did not appeal that ruling.

On December 28, 2023—more than a year after the MAC's first decision, and almost seven months after receiving the Commonwealth's response to his discovery requests—Hunt filed a second motion for a new trial. Id. at 137. Though he requested an evidentiary hearing, the state court denied his motion on the papers on July 22, 2024, incorporating and endorsing the arguments the Commonwealth had advanced in its opposition memorandum. Id. at 27; see id. at 165–68 (arguing Hunt had "failed on multiple occasions to produce any new evidence" supporting his speculation that the relevant witness had received inducements beyond those disclosed and explored at trial). Hunt promptly appealed. Id. at 27.

On August 20, 2025, the MAC affirmed in an unpublished memorandum. Id. at 180–82 (reproducing Commonwealth v. Hunt, 265 N.E.3d 624 (Mass. App. Ct. Aug. 20, 2025) (summary decision)). The MAC's affirmance resulted from its finding that Hunt's claims concerning the destruction of the witness's case files were barred by direct estoppel, as the issue of "undisclosed inducements" to that witness "was already litigated and determined" and "was essential to the disposition" of the claims resolved in Hunt's first new-trial motion. Id. at 181. The SJC denied further review on November 14, 2025. Id. at 34.

Five months later, on April 17, 2026, Hunt filed the federal petition now pending. He raises claims that each derive in some way from his allegation that exculpatory evidence was not timely disclosed by police and prosecutors. See generally Doc. No. 1 at 6–11 (alleging ineffectiveness of trial counsel for failure to adequately investigate inducements offered to key witness, prosecutorial misconduct for failure to disclose police reports concerning key witness and policy governing searches of impounded vehicles, and denial of due process arising from destruction of case files concerning key witness). In this Court, as in all post-conviction proceedings in state court, Hunt continues to be represented by the same lawyer who was appointed soon after his direct appeal was filed.

## II. DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year period of limitation on applications for writs of habeas corpus, and provides that such period "shall run from the latest of":

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Statutory tolling of the limitation period is permitted for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

Hunt's judgment of sentence became final on April 12, 2023, when the ninety-day period for seeking certiorari in the United States Supreme Court on direct appeal expired. See Gonzalez v. Thaler, 565 U.S. 134, 150 (2012); Sup. Ct. R. 13(1). Absent tolling or a statutory exception, then, Hunt was required to file his federal petition on or before April 12, 2024. As the chronology recounted above explains, he filed this action more than two years (or 735 days) later, on April 17, 2026. Because Hunt does not invoke a statutory exception supporting an alternative start date for his limitation period, the timeliness of his claims turns on whether there is a basis to find that the limitation period was tolled for at least 735 days between April 12, 2023, and April 17, 2026.

The parties agree on one period of statutory tolling. There is no dispute that Hunt's second new-trial motion, filed December 28, 2023, was "a properly filed application for State post-conviction . . . review" which tolled the limitation period pursuant to § 2244(d)(2). That motion was pending from the time of its filing until November 14, 2025, when the SJC denied review. As a result, it tolled the limitation period for a total of 687 days. But that is not enough to render Hunt's petition timely.

The respondent contends there is no other basis for tolling the limitation period here. Citing decisions of the Supreme Court, the First Circuit, and other Courts of Appeals addressing what sorts of filings constitute "applications" for "collateral review" under § 2244(d)(2), the respondent argues that Hunt's motions for discovery and for sanctions filed in February and July of 2023 did not toll the limitation period. See Doc. No. 13 at 9–18. If this view is correct, Hunt's federal petition is untimely. 260 days elapsed after Hunt's conviction became final (April 12, 2023) and before he filed his second motion for a new trial (December 28, 2023), leaving Hunt with 105 days to file a federal habeas petition after the SJC denied review of his second

new-trial motion (November 14, 2025). That would mean the deadline for his federal petition was February 27, 2026. Because Hunt filed his petition on April 17, the respondent argues he was late by 49 days.

In response, Hunt urges that "the discovery litigation authorized by the" MAC in its late-2022 decision "qualifies as" a proceeding that tolled the limitation period under § 2244(d)(2). Doc. No. 17 at 9. He suggests his motion for discovery filed in February 2023 was a properly filed request for collateral review, that it was pending when his conviction became final in April 2023 and thereby tolled the limitation period from the start, and that it remained pending until June 5, 2023, when the Commonwealth responded to his discovery requests. Id. at 6–10. If Hunt is correct, his petition is timely. Only 206 days elapsed between the date he concedes his discovery litigation concluded (June 5, 2023) and the filing of his second new-trial motion (December 28, 2023). That would have made his federal petition due by April 22, 2026, or 159 days after the SJC's denial of review (November 14, 2025). He filed five days before that date.

The Court's consideration of the record before it and the governing law leads it to conclude that the respondent's view is the correct one. In advancing his contrary argument, Hunt does not engage with the caselaw cited by the respondent concerning filings that do (and do not) amount to "applications" for "collateral review" that trigger statutory tolling. That precedent eviscerates Hunt's position.

Both the Supreme Court and the First Circuit have made clear that not every "collateral" motion filed by a defendant following a conviction in state court seeks "review" of the underlying judgment. See Wall v. Kholi, 562 U.S. 545, 553, 555–56 (2011); Blue v. Medeiros, 913 F.3d 1, 6–7 (1st Cir. 2019). To toll the limitation period, such a motion must entail "a judicial reexamination of a judgment or claim in a proceeding outside of the direct review

process." Kholi, 562 U.S. at 553. The Supreme Court, affirming the First Circuit, concluded that a postconviction motion to reduce sentence does toll the habeas limitation period, because it "involves judicial reexamination of the sentence to determine whether a more lenient sentence is proper." Id. at 555–56. But in the margin of its decision, the Court expressly distinguished the motion at issue in Kholi from "a motion for post-conviction discovery," which the Court noted "generally" does not seek "judicial review of a judgment" or "provide a state court with authority to order relief from a judgment." Id. at 556 n.4.

Applying the same principles, the First Circuit concluded that a motion to stay execution of sentence pending an appeal will not toll the habeas limitation period. Blue, 913 F.3d at 6–7. Even though such a motion requires evaluation of a defendant's likelihood of success on appeal, it "in no way prejudges the merits of the" appeal and, thus, does not invite collateral "review" of the underlying claims or judgment. Id. (citation modified). The First Circuit has similarly rejected attempts to invoke statutory tolling during the pendency of state-court petitions for extraordinary relief and appointment of postconviction counsel. See id. at 7 (citing cases, including Second Circuit decision finding no tolling triggered by motion to reopen appeal).

Here, Hunt's discovery motion sought to compel the Commonwealth to disclose five categories of information. Doc. No. 13-1 at 88–90. It invoked a Massachusetts Rule of Criminal Procedure that provides for discovery "as is deemed appropriate" by the state court upon a showing by the defendant of "a prima facie case for relief." Mass. R. Crim. P. 30(c)(4). The motion did not invite review of Hunt's conviction or sentence or the merits of any of his collateral claims. The rule it invoked does not compel or automatically trigger such review. The MAC decision suggesting (in dicta) that Hunt was entitled to some discovery did not direct any lower court to conduct such review sua sponte. And Hunt's discovery motion was not paired

with a motion expressly seeking such review; in fact, he did not file such a motion until approximately ten months later.

To the extent the discovery motion required the state court to assess Hunt's prima facie showing in support of any collateral claims (which the motion itself does not identify or address, Doc. No. 13-1 at 88–90), that preliminary assessment is at most akin to the "likelihood of success" showing the First Circuit deemed insufficient to satisfy the "review" prerequisite to statutory tolling under § 2244(d)(2). Blue, 913 F.3d at 6–7. Hunt's discovery motion alone did not seek, and could not have resulted in, the sort of collateral review of his judgment during which the state court was empowered to order relief from that judgment, as required to statutorily toll the limitation period. See Kholi, 562 U.S. at 555–56 & n.4.

As the respondent has ably explained in his motion papers, at least five other Courts of Appeals have rejected tolling claims arising from similar post-conviction discovery motions, unaccompanied by any request for affirmative review of or relief from the underlying judgments. See Doc. No. 13 at 12–13 (collecting cases and noting that two contrary Circuit decisions involved motions pursuant to state DNA statutes that mandated further proceedings and "review" upon completion of testing). In these circumstances, the Court finds that neither the law nor the facts support treating Hunt's February 2023 discovery motion as a request for "collateral relief" that tolled the one-year habeas limitation period.[3]

Perhaps realizing the law does not support viewing his discovery motion as having stopped the clock under § 2244(d)(2), Hunt seeks to recharacterize the MAC's first decision as

[3] Hunt's subsequent motion for sanctions against the Commonwealth for its destruction of two case files in the ordinary course would not support a period of statutory tolling either, for the same reasons. Hunt does not attempt to argue otherwise and, therefore, has waived any claim to tolling based on that July 2023 motion. See Doc. No. 17 at 10 n.2.

one vacating the denial of, or leaving open proceedings related to, his first new-trial motion. See Doc. No. 17 at 6–7 (arguing that MAC decision "logically and procedurally amounts to a vacatur and remand"). But the unambiguous text of the MAC's decisions demonstrates otherwise. See Hunt, 2022 WL 16918090, at *1 ("We affirm."); id. at *10 ("Judgment affirmed. Order entered February 10, 2021, denying motion for new trial, supplemental motion for new trial, and motion for postconviction discovery, affirmed."); Doc. No. 13-1 at 182 n.2 ("The defendant's appeal from [the] order [denying his first new-trial motion] was consolidated with his direct appeal; a different panel of this court affirmed both in an unpublished memorandum and order."). To be sure, the MAC expressed its view concerning Hunt's entitlement to certain information, but it did so in language that was plainly permissive. See Hunt, 2022 WL 16918090, at *10. It did not mandate any further action by the lower court (absent a new request by Hunt). Nor did it suggest that Hunt's previously filed discovery motion—let alone his first new-trial motion—remained open. To the contrary, the MAC affirmed the denial of those motions while providing that Hunt "may file a [new] motion" seeking discovery "if he chooses." Id. There is simply no basis, on this set of facts, to find that Hunt's first new-trial motion remained pending and supplied a basis for statutory tolling after the SJC denied review the first time, or that the MAC's first decision supports statutory tolling continuing into the months after Hunt's conviction became final.

All of this means Hunt's petition was filed late, after the expiration of the one-year period provided by § 2244(d). The only avenue remaining for saving the untimely petition from dismissal, then, is the doctrine of equitable tolling. A petitioner is entitled to equitable tolling of the one-year limitation period "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S.

408, 418 (2005)); accord Drew v. MacEachern, 620 F.3d 16, 23 (1st Cir. 2010). "[E]quitable tolling 'is the exception rather than the rule.'" Riva v. Ficco, 615 F.3d 35, 39 (1st Cir. 2010) (quoting Delaney v. Matesanz, 264 F.3d 7, 14); see Trapp v. Spencer, 479 F.3d 53, 59 (1st Cir. 2007) (noting equitable tolling is only "rare[ly]" appropriate and placing on petitioner "the burden of establishing a basis for" it).

"The diligence prong covers those affairs within the petitioner's control, while the extraordinary-circumstances prong covers matter outside his control." Blue, 913 F.3d at 8. The diligence standard required by the doctrine of equitable tolling is "reasonable diligence," not "maximum feasible diligence." Holland, 560 U.S. at 653 (citation modified). Extraordinary circumstances, for these purposes, require more than "'garden variety' or 'excusable neglect,'" id. at 651, but less than gross negligence coupled with "bad faith, dishonesty, divided loyalty, mental impairment, or so forth on the lawyer's part," id. at 649 (citation modified). As far as extraordinary circumstances are concerned, "it is up to the petitioner to establish a causal relationship between [such] circumstances . . . and the lateness of his filing." Blue, 913 F.3d at 8 (citation modified).

Hunt attempts to fit this case within the narrow exception created by the equitable-tolling doctrine by emphasizing two events that occurred during the course of proceedings related to his first new-trial motion. See Doc. No. 17 at 11–14. He first cites "judicial error," asserting the MAC had to "set out a roadmap for litigation" that "required the Superior Court to correct [its] erroneous denial" of Hunt's first discovery motion. Id. at 12. But, as noted already, the MAC did not find any error (or abuse of discretion) by the lower court; rather, it affirmed the denial of Hunt's discovery motion. Hunt, 2022 WL 16918090, at *10. Next, Hunt cites "prosecutorial misconduct" arising from the destruction of two case files he sought and the Commonwealth's

statements to the state courts concerning when that destruction occurred. Doc. No. 17 at 12–13. But even assuming either or both of these theories describe the sort of circumstances that could qualify as "extraordinary," all of these facts were admittedly known to Hunt by early June 2023. At that time, he still had more than ten months remaining on his one-year habeas clock.

For tolling to apply, Hunt would need to show a causal link between the state court's alleged "error" and the Commonwealth's alleged "misconduct" on the one hand and the lateness of his habeas petition on the other. He has not done so. Hunt has not explained why he waited until December 2023 to file his second new-trial motion—rather than doing so along with his February discovery motion or upon receiving the Commonwealth's discovery response six months earlier. He has not articulated a reason why the circumstances he identifies (arising in 2023) prevented him from filing his federal petition in or before February 2026 (when it would have been timely). For much the same reasons, Hunt has not shown he was reasonably diligent.

That his tardiness was relatively brief and therefore likely has not prejudiced the Commonwealth is not grounds for equitably tolling the limitation period. See Doc. No. 17 at 14. As the First Circuit has admonished, "it should have been clear to" Hunt (and his long-serving attorney) once the SJC denied review of his second new-trial motion in November 2025 "that all state-court avenues for relief had been exhausted," and that "he needed to move swiftly to preserve his federal rights." Blue, 913 F.3d at 10. No obstacles then remained to his pursuit of a federal remedy, and he still had more than three months left in which to do so. Hunt has identified no justification for failing to file within that period.

In sum, Hunt has not satisfied his burden of demonstrating that his case is one in which equitable tolling is merited. Accordingly, the time-limiting provisions of AEDPA require that his petition be dismissed.

## III. CONCLUSION

For the reasons set forth above, the respondent's motion to dismiss (Doc. No. 12) is ALLOWED. Hunt's federal habeas petition (Doc. No. 1) is DISMISSED.[4]

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge

---

[4] Because "reasonable jurists" could not "debate whether . . . the petition should have been resolved in a different manner," Slack v. McDaniel, 529 U.S. 473, 484 (2000), and based on the circumstances described above, no certificate of appealability shall issue. Hunt failed to timely bring his federal claims to this Court, and the record does not support a finding of diligence or extraordinary circumstances justifying equitable tolling.